*Hartford,*
June, 1835.

MERRILS *against* THE TARIFF MANUFACTURING COMPANY.

Merrils
*v.*
The Tariff
Manufacturing
Company.

In assessing the damages in actions for injuries to personal property, the jury are not restricted to the pecuniary loss of the plaintiff, but may take into view the circumstances of aggravation attending the transaction alleged and proved.

And it makes no difference, in this respect, whether the form of the action is *trespass* or *case.*

Therefore, where it was alleged and proved, in an action on the case, that the plaintiff, a clothier, being the owner of one moiety of certain clothier's works, with the land and privileges connected therewith, which he had mortgaged to a third person, and had paid the mortgage debt, leaving the legal title outstanding, the defendants, proprietors of an adjoining manufactory of cloths, purchased the other moiety, and then, with a view to break up the plaintiff's business and get rid of him as a competitor, bought in the outstanding legal title, and, under colour of that title, appropriated the whole of the water privileges and clothier's works to their own use, and expelled the plaintiff therefrom ; it was held, that the jury, in estimating the damages, might consider the motives and objects of the defendants in committing the acts complained of.

THIS was an action on the case. The declaration stated, That on the 9th of *April*, 1822, the plaintiff was seised and possessed, in his own right in fee simple, of a moiety in common and undivided of certain clothier's works, at *Griswold's Mills* in *Simsbury*, consisting of land and water privileges, dye-house, fulling-mill, finishing shop, machinery, tools and apparatus, of the value of 1500 dollars, and mortgaged his said moiety of the premises, by mortgage deed, then executed and delivered, to *Luther Laflin*, to secure certain promissory notes due to him from the plaintiff ; that previous to *May*, 1826, but after the time limited in the condition of the mortgage, the plaintiff paid and fully satisfied the mortgage debt ; that the plaintiff, a clothier by trade, carried on, in said clothier's works, an extensive and profitable business ; that in the year 1835, the defendants purchased the adjoining premises, and erected thereon the buildings for their manufactory, and also purchased and received a conveyance of the other moiety of said water privileges and fulling-house in common and undivided, and became tenants in common thereof with the plaintiff ; that the defendants being desirous of appropriating the whole of said water privileges to their own use, and of getting rid of said

*Hartford,*
June, 1835.

Merril's
*v.*
The Tariff
Manufacturing
Company.

clothier's works, as interfering with their manufacturing establishment, and thus to ruin the plaintiff in his business, the defendants, on the 23d of *May*, 1826, applied to *Laflin*, and wrongfully and injuriously, for a small sum of money, induced him, in breach of trust, to convey to the defendants all his right and title under and by virtue of said mortgage deed; that the defendants, having thus acquired the legal title outstanding in *Laflin*, did, on the 20th of *August*, 1826, under colour of such title and by virtue thereof, by removing and destroying said dye-house and fulling-mill, wrongfully and injuriously disturb and interrupt the plaintiff's business as a clothier, and did expel him from the premises and did apply the whole of said water privileges, land and finishing shop (the latter being converted, by the defendants, into a dwelling-house for their weavers) to their own use in carrying on their manufacturing business, and deprive the plaintiff of all use and benefit thereof.

The cause was tried at *Hartford, February* term, 1835, before *Huntington,* J.

On the trial, the plaintiff claimed to have proved all the allegations in his declaration;—particularly, the value of the annual use of his moiety of the finishing shop, land and water privileges, during the time he was deprived of them, and the extent of his business when so broken up; that this was effected, partly in the year 1826, by the defendants putting the plaintiff's tools out of the finishing shop and putting lime into it, and using the clothier's shop for their own exclusive purposes, and entirely, in the year 1827, by the defendants converting the finishing shop into a dwelling-house for their weavers, and taking down and removing the clothier's shop and carrying away the fulling-mill. The plaintiff also claimed, that the jury, in estimating the damages, should take into consideration the wrongful acts of the defendants alleged in the declaration, so far as they were proved, and particularly for the loss of his business and the profits thereof, and of the use of the water privileges and finishing shop, during the period he was so deprived thereof.

The defendants introduced the record of a former suit between these parties upon a decree in chancery; and the plaintiff admitted, that in such suit, he had recovered for the failure of the defendants to convey to him, according to the terms of said decree, his moiety of said clothier's shop, fulling-mill, machinery and tools, or to pay the value thereof; and disclaimed any right

HARVARD LAW LIBRARY

*Hartford,*
*June,* 1835.

Merrillls
*v.*
The Tariff
Manufacturing
Company.

to recover for the value or use of the same in the present action.

The defendants denied, that the plaintiff had proved the facts alleged in his declaration, and claimed, that they were entitled to a verdict; but if otherwise, the plaintiff could only recover a reasonable compensation for the use of one moiety of said privilege and finishing shop, during the time he had been held out of the use thereof, by the defendants; and was not entitled to recover any thing for any uncertain loss of profits, which he might have made, by carrying on his business.

The court instructed the jury, that if the plaintiff had proved the facts set forth in his declaration, he was entitled to a verdict; and that in regard to the damages, he would be entitled to recover for the use of one moiety of the finishing shop, during the time he had been kept out of the possession thereof, by the defendants; and also for the use of one moiety of the water privileges, for the time he had been so held out of the possession thereof; but that the jury could not award any damages for the loss of uncertain and contingent profits which the plaintiff might have made in carrying on his business, by the use of the water privileges and buildings, during the time he was so held out of them; and that if the jury should find the allegations proved, that the defendants purchased the outstanding legal title of the satisfied mortgage from *Laflin,* for the purpose of appropriating the whole of the water privileges to their own use, and of getting rid of the plaintiff and expelling him therefrom; and that they entered upon the premises, and under colour of that title, for the purposes aforesaid, committed the wrongful acts complained of;—that if the injury complained of was done from such motives and for such objects, they had a right to take them into consideration, in estimating the damages, to which the plaintiff was entitled.

The jury gave a verdict for the plaintiff; and the defendants moved for a new trial for a misdirection.

*Hungerford,* in support of the motion, contended, That admitting the conduct of the defendants to have been fraudulent, the jury ought not to have taken it into consideration in estimating damages. The damages should have been commensurate only with the injury sustained; and whatever may have

been the motive of the defendants, it did not affect the extent of the injury. *Rockwood* v. *Allen,* 7 *Mass. Rep.* 254. 256.

*Hartford,*
June, 1835.

Merrills
*v.*
The Tariff
Manufacturing
Company.

In actions on the case for injuries affecting property merely, the rules of law do not require or allow *vindictive* damages; as in the case of trover where the force is waived. *Kennedy* v. *Whitwell* & al. 4 *Pick.* 466, 7.

As a general rule, vindictive damages are given only in the action of *trespass ;* and then only when the trespass is attended with some peculiar circumstances of aggravation ; as in the case of extreme cruelty, provocation or insult, wantonness or malice. 1 *Sw. Dig.* 161. *Edwards* v. *Beach,* 3 *Day* 447. *Merest* v. *Harvey,* 5 *Taun.* 442. *Sears* v. *Lyon,* 2 *Stark. Ca.* 317. *Bracegirdle* v. *Orford,* 2 *Mau.* & *Selw.* 77. S. C. 7 *Petersd. Dig.* 590. *Woert* v. *Jenkins,* 14 *Johns. Rep.* 352. 4 *Stark. Ev.* 1450. & seq.

In actions for injuries to property, under ordinary circumstances, if it be destroyed, the value of the property destroyed, or if injured, the extent of the injury, is usually the guide to damages, unless in the case of special damages. *Richardson* v. *Dukes,* 4 *McCord* 156. *Coffin* v. *Coffin,* 4 *Mass. Rep.* 41. *Spear* v. *Hubbard,* 4 *Pick.* 143.

When the action is for an injury to the person or the relative rights of the party, either in trespass or in case, exemplary damages may be given, the jury having no other guide than their own discretion ; but where the actual damages can be ascertained, these must be the guide. *Coffin* v. *Coffin,* above cited ; *Gilbert* v. *Berkinshaw, Lofft* 771. This position is applicable to actions of slander, libel, malicious prosecution, adultery, seduction, &c.

*Toucey,* contra, insisted, That the charge, in relation to the damages, was adapted to the nature of the case, and was the only proper direction that could have been given. All the material facts stated in the declaration were in issue, and were submitted to the jury. They have found, first, that the plaintiff, by the acts detailed, has been broken up in his business ; and secondly, that the defendants have appropriated the whole of the privileges to themselves ; the acts alleged having been done with a view to these results. The combined facts constitute the *wrong done.* If the designs of the defendants had been kept out of view, the whole case would not have been sub-

HARVARD LAW LIBRARY

*Hartford,*
*June, 1835.*

Merrills
*v.*
The Tariff
Manufacturing
Company.

mitted.    Independently of authorities, no rule could be prescribed, by which the precise injury sustained could be measured. But the question is not an open one.    It is settled in conformity to the charge, even by the authorities cited by the defendants' counsel.    Others, equally if not more decisive, might be adduced ; but it is unnecessary.

The opinion of the Court was delivered by HUNTINGTON, J.

This case comes before us, to correct a supposed error in the instruction given to the jury at the trial, that in estimating the damages, they were at liberty to take into consideration, the fraudulent and malicious motives and objects with which the defendants are charged to have committed the injury set forth in the declaration. It is insisted, that in *actions on the case* for injuries to personal property, the pecuniary loss sustained, is the measure of legal compensation.    It is admitted, that in actions of *trespass* for similar injuries, this rule of estimating the damages, is not always applicable.    We do not admit the correctness of this distinction.    We have not been furnished with any precedent in support of it ;  nor have we been able to find one.  We think, that the rule which ought to govern juries in assessing damages for injuries to personal property, depends not so much on the *form* of the action, as on the circumstances attending the case ;  and that whether redress is sought, by an action of *trespass,* or *on the case,* (and especially, where the latter is the only remedy, as in the present case,) if the injury is averred and proved to have been committed maliciously,—wantonly,—to gratify revenge,—from a spirit of ill-will and a desire to injure,—or with the view of obtaining, unlawfully and with a fraudulent intent, a benefit to the defendant, by means of the injury to the property of the plaintiff, these circumstances of aggravation, may, with great propriety, be considered, in fixing the remuneration to which the plaintiff is entitled. ) We cannot perceive any good reason why one measure of damages should be meted out to a plaintiff, who sues in trespass, and a different one, to a plaintiff who sues in case, for a similar injury, attended with similar circumstances.    Such distinction would be as arbitrary and unjust, as it is technical.    If the owner of a well should bring trespass against another, for an entry on his land and putting into the well any poisonous or offensive substance, the jury would not be restricted, in awarding damages, to the

actual pecuniary loss which the plaintiff may have sustained. *Sears* v. *Lyons*, 2 *Stark. Rep.* 317. And why should they be so restricted, should the plaintiff be a cotenant with the defendant of the well, and should bring an action *on the case* for the like injury, committed under like circumstances? In actions on the case for injuries to incorporeal rights, where it is averred and proved, that they were violated from malicious motives, with the sole design to injure, it seems to us, to be consonant to the immutable principles of justice, that the same measure of redress should be awarded in such actions, as, it is admitted, would and ought to be given for similar injuries, committed in a similar manner, and where trespass would be the appropriate form of action. There is nothing in the legal nature of an action on the case, different from an action of trespass, which forbids the application of the same just and equitable rule of damages to both. Whatever be the form of action, the injury is the same, and the legal compensation ought to be the same. No adjudicated case has been cited, nor have we found one, contravening these plain and obvious principles of justice and equity. We should have been surprised had any such case been found. It is familiar to us all, that in actions on the case tried at the circuit, the rule of damages stated to the jury in this case, has been one of constant application, and as we believe, has been not only acquiesced in, but approved, by the profession. We are not aware, that until this case arose, it was ever questioned. If therefore, there is no reported precedent for it, in our own courts, it is, probably, because it was never before doubted. The opinion now expressed, is in accordance with the decision in *Gunter* v. *Astor* & al. 4 *J. B. Moore* 12. In that case, it is quite apparent, that the court considered the manner in which the defendants committed the injury, as having been properly considered by the jury, in estimating the damages. It was an action on the case for enticing away the plaintiff's workmen from his manufactory, to go into the service of the defendants. They were invited, by the defendants, to a dinner—who caused them to be intoxicated, and then induced them to sign an agreement to leave the plaintiff, and come to them. It was proved, that the plaintiff realized about 800*l. per annum*, by the sale of his manufactured articles; and the jury gave him 1600*l.* A motion for a new trial, on the ground of excessive damages, was made and argued;

*Hartford,*
June, 1835.

Merrills
*v.*
The Tariff
Manufacturing
Company.

*Hartford,*
*June, 1835.*

Merrils
*v.*
The Tariff
Manufacturing
Company.

but was refused. *Dallas,* Ch. J. said : "I left it to the jury to give damages commensurate with the injury the plaintiff had sustained. The defendants clandestinely sent for his workmen, and having caused them to be intoxicated, induced them to sign an agreement to leave him and come to them ; by which the plaintiff was nearly, if not absolutely, ruined. I am by no means dissatisfied with the verdict the jury have found; as the conduct of the defendants, in point of fact, amounted to an absolute conspiracy." *Park,* J. said, " the misconduct of the defendants, in this case, appears to have been most gross."

We think the instruction to the jury was correct, and consequently, do not advise a new trial.

All the Judges concurred in this opinion.

New trial not to be granted.