WILLIAM H. WILLIAMS, STATE'S ATTORNEY, *vs.* THE CITY OF NEW HAVEN ET AL.

Third Judicial District, New Haven, June Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In mandamus proceedings the alternative writ serves as the complaint, and the return as the answer. The return must show a complete legal right in the respondent to refuse obedience to the command of the alternative writ, otherwise it is open to demurrer; and such legal right is not shown by an averment of matters which are addressed merely to the discretion of the trial court as a reason for delay in issuing the peremptory writ.

The charter of the city of New Haven required its common council, in

December of each year, to make appropriations for the necessary expenses of the city for the year following, and prohibited all city officers and boards from expending any money or incurring any liability in excess of the sums so appropriated. The city had been ordered by a lawful decree of court to build a certain bridge, but the common council had omitted to provide the means for carrying such order into effect. *Held* that while the charter provisions furnished the rule of conduct for the officers of the city in the administration of its internal affairs, they certainly did not excuse the city or its officers from obedience to the laws of the State. and the lawful judgments of its courts.

Where there is no municipal officer or board specially charged with the performance of the thing which the writ of mandamus orders to be done, the writ may be directed to the municipality in its corporate capacity.

[Argued June 9th—decided October 6th, 1896.]

APPLICATION for a peremptory writ of mandamus requiring the respondents to comply with an order of the Superior Court abolishing a certain grade crossing in the city of New Haven; brought to the Superior Court in New Haven County and reserved by that court, *Prentice, J.,* upon the relator's demurrer to the return of the respondent city, for the consideration and advice of this court. The railroad company, the other respondent, filed no return. *Judgment sustaining demurrer advised.*

The application showed : that the railroad commissioners of this State, on the 17th day of June, 1886, made and issued their order pursuant to law, directing and commanding the city of New Haven and the New York, New Haven & Hartford Railroad Company to make certain specified changes in Chapel street in said city, such that the grade crossing of the freight tracks of the said railroad over said street should be eliminated. From that order an appeal was taken to the Superior Court for New Haven county, by the New Haven Steam Saw Mill Company, an adjoining landowner, which after being duly served, was returned to the Superior Court held in said county on the first Tuesday of September, 1886, at which time all the parties in interest appeared, and thereupon such proceedings were had that the Superior Court modified the order and confirmed the same so modified, and rendered its judgment thereon as follows : " This court having re-examined

the question of the propriety and expediency of the order appealed from, finds that public safety requires the alteration of the said highway, and that said alteration is a matter of public convenience and necessity. Whereupon it is adjudged that the said order of the railroad commissioners be and hereby is modified so that said order when modified shall read as follows, and the same is made an order of this court. *Ordered :* That the highway known as Chapel street in the city and town of New Haven be so altered as to cross over the freight branch, so called, of the New York, New Haven & Hartford Railroad by a bridge, . . . . the height of said bridge above the rails to be not less than fifteen feet in the clear; and in order that the grade of the approaches may be as light as possible, we do direct that the tracks at said crossing be lowered twenty inches, the work of lowering said tracks to be done by said railroad company, and all other work incident to said alterations, including the building, making and construction of the bridge, abutments, embankments and approaches, to be done and performed by the city of New Haven, in general accordance with the plan on file in the office of the railroad commissioners of the State of Connecticut, marked ' Proposed Bridge at Chapel Street over the N. Y., N. H. & H. R. R. New Haven Ct. June 17th 1886 Albert B. Hill, City Engineer.' All of said alterations to be made and completed within two years from the date of this order, and including the land damage, if any, incident to said alterations, to be at the joint expense of said city and railroad company, each in the first instance to pay the cost of the alterations ordered to be made by it, and the land damages as they may be assessed. And on the completion of said alterations and the payment of said costs and land damages, if it shall appear that the amount paid by the city is in excess of that paid by the railroad company, the said company to pay said city one half of said excess ; but if it shall appear that the amount paid by said company is in excess of that paid by said city, then said city to pay to said company one half of said excess." That the said order and judgment had not been complied with and obeyed by the

said city and the said railroad company, and that both the said city and the said railroad company had neglected and refused so to do.

The State's Attorney moved the court that a peremptory writ of mandamus be issued by said court, requiring and enjoining the city and the railroad company to comply with and carry out the provisions of the said order as confirmed by said court; and thereupon the court issued an alternative writ which, after reciting the several steps and proceedings as stated in the application, required and enjoined the said city and the said railroad company to comply with and carry out all the things directed and provided in the said order and judgment, or show cause to the contrary. This was served on the defendants according to an order of notice made by the Superior Court. On the return day the said city appeared and made return as is below recited. The said railroad company made no return.

"And now the city of New Haven comes into court and makes return to the alternative writ of mandamus issued by order of court on the 11th day of February, 1896, and for reasons why a peremptory writ should not issue, assigns the following: 1. The highway in the city of New Haven known as Chapel street, at the place crossed at grade by the freight branch tracks of the New York, New Haven & Hartford Railroad Company, and for a long distance east of said freight branch, is one of the main avenues of approach from the eastern part of said city known as Fair Haven, and Fair Haven East, to the city of New Haven, and there is one other avenue of approach from said places to said city, known as Grand avenue, and substantially all the travel from said Fair Haven and Fair Haven East, to the city of New Haven, passes over either said Chapel street or said Grand avenue; and the city of New Haven has been ordered by the United States government to construct during the year 1896, and prior to January 1st, 1897, a bridge across Quinnipiac river on said Grand avenue, which said order is now being complied with, and travel on said Grand avenue will soon be blocked, so that if said city of New Haven is obliged to com-

ply with the order of the Superior Court and construct a bridge at said freight branch crossing of Chapel street, travel over both of the principal avenues of approach and highways leading to the city of New Haven from said Fair Haven and Fair Haven East, will be cut off, and greatly obstructed and interfered with.

" 2. And further answering said city alleges and affirms that east of said freight branch crossing, and on said Chapel street, there is a bridge across Mill river, so-called, which will have to be replaced by a new bridge within a short period of time, and said city has commenced to make preparations for the construction of said bridge; and public convenience and necessity will be best served if the bridge across said freight branch, and the bridge across said Mill river on Chapel street, with the necessary changes in grade and improvements, can be all carried out at the same time.

" 3. And further answering, said respondent says the charter of the city of New Haven provides that the court of common council shall, ' during the month of December in each year, make such appropriations, based upon the estimates of the board of finance, as may seem to be necessary and proper to meet the expenses of said city for the year next ensuing; but the total amount of such annual appropriations for any one year shall not exceed the estimated income for that year, nor shall any city or department officer, or board of commissioners of said city, make any expenditures except for the objects and purposes specified by said court of common council; nor shall any city or department officer, or board of commissioners of said city, incur any liability or expense, by contract or otherwise, for which said city shall be responsible, in excess of the appropriations so made by said court of common council; ' and that the estimated income for the year 1896 has already been appropriated for the necessary expenses of the city during said year, and nothing was appropriated by said court of common council for the purpose of constructing a bridge across the said freight branch of the New York, New Haven & Hartford Railroad Company; and in order to construct said bridge it will be necessary for some city or depart-

ment officer, or board of commissioners of said city, to incur a liability or expense for which said city shall be responsible, in excess of the appropriations so made by said court of common council, and in excess of the estimated income of said city, which neither said officer nor board has power, under said charter and under the law, to do.

"4. And further answering, said respondent says that the court of common council of the city of New Haven, on account of the public convenience and necessity, and because of the necessary obstruction and inconvenience to public travel which would have been caused by any work on said Chapel street during the ensuing year, and on account of the other necessary expense of carrying on the city government during the year 1896, took no steps towards, and made no appropriations for, the erection of the bridge across said freight branch for said year.

"5. And further answering, said respondent says that public convenience and necessity does not require the construction of said bridge at this time, but will be best served by postponing the work and said construction until a later year. Wherefore said city of New Haven says that no writ of mandamus should be issued against it, and that the same should be dismissed."

To this return the State's Attorney demurred; and the questions arising thereon were reserved for the advice of this court.

*Timothy F. Callahan*, for the relator.

Mandamus is the appropriate action to enforce said modified and confirmed order of the railroad commissioners.    Gen. Stat. §§ 3483, 3491, 3518.    The State's Attorney is the proper party to prosecute.    *State's Attorney* v. *Selectmen of Branford*, 59 Conn. 402.    The burden rests on the respondent to show a clear right to refuse obedience to the alternative writ.    If the return fails to show such right, it is demurrable. *Woodruff* v. *N. Y. & N. E. R. R.*, 59 Conn. 86 ; *Daly* v. *Dimmock*, 55 id. 590 ; 14 Amer. & Eng. Ency. of Law, 230, n. 4 ; *State ex rel. Cothren* v. *Lean*, 9 Wis. 279, 304 ; High on

Ex. Remedies, §§ 449, 460; Moses on Mandamus, 210. In some cases the enforcement of the writ is a matter of discretion, but the court has no discretion to refuse a writ applied for to enforce a law for the public benefit, provided a clear right to its enforcement is shown. *N. H. & N. Co.* v. *Conn.*, 44 Conn. 390, 391; Tapping on Mandamus, 54, 56, 288; Dillon on Municipal Corp. (4th Ed.) § 865. The return amounts in substance to an attempt to show the inexpediency of undertaking the work ordered, at the present time. It appears from the judgment file of the original action, that the court examined the question of the propriety and expediency of the order of the railroad commissioners, and found that public safety required the alteration in the highway to be made; that said alteration was a matter of public convenience and necessity; and ordered that said alteration be made. The respondent is therefore estopped from raising the question of expediency in this action, and the return is insufficient. 1 Chitty on Pleading, *p. 604; *Jackson* v. *Lodge,* 36 Cal. 28. The facts alleged in the return are insufficient, even if the alternative writ be treated as establishing only a *prima facie* right in the relator to obtain the relief asked for. *Woodruff* v. *N. Y. & N. E. R. R. Co.*, 59 Conn. 86; High on Ex. Rem. (2d Ed.) § 460; Moses on Mandamus, 210; *People* v. *Baker*, 35 Barb. (N. Y.) 105; *Thomas* v. *Commissioners of Allegheny Co.*, 32 Pa. St. 218, 224; *State ex rel. Cothren* v. *Lean*, 9 Wis. 279, 304; *People ex rel.* v. *Ohio Grove Township*, 51 Ill. 191, 195. The fact that the city has disobeyed the order and neglected to appropriate money to build the bridge, cannot relieve it or its servants from the duty imposed by law. *Whitney* v. *New Haven,* 58 Conn. 450, 461; *Cook* v. *Ansonia*, 66 id. 413, 421, 422; *Park Eccl. Soc.* v. *Hartford*, 47 id. 93

*William H. Ely*, for the respondent, the city of New Haven.

It is clear that the city could not legally construct this bridge to-day, because it has no funds with which to do it, and if any of its officials should undertake to expend any money or make any contract for this purpose, the city and officials would be acting in violation of the charter. *Wil-*

*liams* v. *County Commissioners*, 35 Me. 345, 347 ; *State* v. *Perrin*, 34 N. J. L. 254, 257 ; *Atlantic City Water Works Co.* v. *Reed*, 50 id. 665 ; *United States* v. *County of Clark*, 95 U. S. 769–773 ; *Board of Comrs.* v. *State*, 42 Kan. 327 ; *State* v. *Comrs.*, 39 id. 700 ; Beach on Public Corporations, § 1609 ; *People* v. *Fowler*, 55 N. Y. 252 ; *Howland* v. *Eldridge*, 43 id. 457 ; *People* v. *Hyde Park*, 117 Ill. 462 ; *Hall* v. *Steele*, 82 Ala. 562. The fact that there are no funds that can now be appropriated for the desired purpose, shows that there is no clear right to the relief demanded. *State ex rel.* v. *Somerset*, 44 Minn. 549 ; *Com.* v. *Comrs. of Lancaster Co.*, 6 Binn. 5 ; *Com.* v. *Comrs. of Phila. Co.*, 1 Whart. 1, 2, id. 286. It is a fundamental principle that the peremptory writ should run singly to the person whose duty it is to perform the act required. *Farrell* v. *King*, 41 Conn. 453. The writ lies not against the city but "against the body upon whom the duty of 'putting the necessary machinery in motion' is imposed." *People* v. *Common Council*, 3 Keyes (N. Y.), 81 ; 14 Amer. & Eng. Ency. of Law, 219 ; *State's Attorney* v. *Selectmen of Branford*, 59 Conn. 409. This point can be raised on de-murrer. *Peck* v. *Board of Surpervisors*, 90 Cal. 384. The attorney for the State should have commenced his action earlier, and should not have waited until it was too late for the city to legally do what he wishes. The city has no powers except such as are given it by its charter. *New London* v. *Brainerd*, 22 Conn. 552 ; and the charter allows it to spend money and make contracts, only after the money has been appropriated in a certain way out of its estimated income. Charter, § 60. Taking into consideration the fact that the city cannot legally act at this time and that public conven-ience and necessity will be best served by postponing the change of this crossing until a later year, the writ should be dismissed.

ANDREWS, C. J. In an application for a mandamus, the alternative writ serves the same purpose as the complaint in an ordinary action, and it must show a *prima facie* case upon which the extraordinary remedy asked for ought to be

issued. In the present action the facts alleged in the alternative writ do show such a case, viz: a lawful judgment against the defendants, and their neglect and refusal to comply with that judgment.

The return made to an alternative writ of mandamus stands in the place of an answer in ordinary pleadings, and is insufficient unless it shows a complete legal right to refuse obedience to the command of the alternative writ. "It must state the facts which justify such refusal clearly, specifically, and with such sufficient certainty that the court can see at once that such facts, if admitted or established, do furnish a legal alternative for obedience to the writ." *Woodruff* v. *N. Y. & N. E. R. R.*, 59 Conn. 63, 86; *Brainard* v. *Staub*, 61 id. 570; Moses on Mandamus, 203; High on Extraordinary Remedies, § 449. The function of the return is not simply to show what would amount to a *prima facie* right in the respondent in the absence of any allegation to the contrary; but to show a right to refuse obedience to the writ in view of the allegations the writ contains, and if it does not do this it is demurrable. The return should, for the purpose of making an issue, set up a positive denial of the facts stated, or should state other facts sufficient to defeat the relator's right. 14 Amer. & Eng. Ency. of Law, 230.

This is the rule by which the return before us must be treated. Does it show a legal right to refuse obedience to the command in the alternative writ? We are compelled to say that we think it does not. It is divided into five paragraphs. In none of them does it deny any of the allegations contained in the alternative writ. The matters and things set forth in the first, second and fifth paragraphs, are not alleged as an excuse for an entire non-compliance with the command of the alternative writ, but are addressed to the discretion of the Superior Court, as a reason why the issuing of the peremptory writ should be delayed for a time. The Superior Court has doubtless a large discretion in respect to the issuing or the non-issuing of a writ of mandamus; and very likely may fix a time prior to which the peremptory writ may not be issued. Whether or not the matters alleged in

the above-named three paragraphs of the return are such as would justify the exercise of such a discretion, rests entirely with the Superior Court. That is a question not arising on the demurrer. In passing upon that question the Superior Court would not be likely to forget that the city had delayed for some five or six years to perform the judgment set forth in the alternative writ, for which delay no excuse is suggested other than its own convenience.

The matter set forth in the third and fourth paragraphs is somewhat different. It is to the effect that the charter of the city requires the common council, in December of each year, to make appropriations to meet the necessary expenses of the city for the year next ensuing, and forbids all city officers and boards to expend any money, or to incur any liability, in excess of the sums so appropriated; that the common council, in December, 1895, made certain appropriations for the expenses of the city for the year then next following, " and nothing was appropriated by said common council for the purpose of constructing a bridge across the said freight branch of the N. Y., N. H. & H. R. R. Co.;" that to construct said bridge, it would be necessary for some officer or board to incur a liability or expense in excess of the appropriations, which no officer or board had power under the charter or under the law to do.

If these facts are a legal excuse for refusing to obey the command of the alternative writ, they are so because the omission of the common council to provide the means for complying with the judgment of the Superior Court, absolves the city from the legal duty of performing that judgment. Except that these facts are stated with apparent sincerity and are argued with gravity, this part of the return would almost be deemed ironical; especially when it is presented to the same court which rendered the judgment sought to be enforced. The provisions of the charter of New Haven certainly furnish the rule of conduct for the officers of that city in the administration of its internal affairs, but that these provisions can furnish any excuse to the city or its officers for not obeying the laws of the State, or the judgment of a

competent court, is not to be tolerated for an instant. *Cook* v. *City of Ansonia*, 66 Conn. 413.

There is another reason, not stated in the return but argued in the briefs, which we think it proper to notice. It is that the writ of mandamus should be directed to that officer or board which is specially charged with the performance of the thing ordered to be done. In all those cases where there is such a corporate officer or board, we understand the rule to be as claimed by the city. In the case of *State's Attorney* v. *Selectmen of Branford*, 59 Conn. 402, the selectmen were such a board; in the case of *State ex rel. Judson* v. *County Commissioners*, 68 Conn. 16, the county commissioners were such a board; in the recent case of *State ex rel. Bulkeley* v. *Williams, ibid.* 131, the defendant was a town treasurer whose duty was expressly pointed out by the statute. By the charter of New Haven there is no such officer or board; and in such cases the mandamus may be directed to the city in its corporate capacity. Dillon on Municipal Corporations, § 861, *b* and note.

The Superior Court is advised that the return is insufficient, and to sustain the demurrer.

In this opinion the other judges concurred.